UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 11-15-GWU

SUSAN L. YORK,                                                                       PLAINTIFF,

VS.                                     **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

        Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

    In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Susan L. York, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic neck pain secondary to degenerative disc disease/degenerative joint disease of the cervical spine, degenerative joint disease of the right shoulder, and migraines.  (Tr. 12). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. York retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 15-18).  The Appeals Council declined to review the ALJ's decision, despite the plaintiff's contention that she had been awarded benefits on a subsequent claim beginning the date after the current administrative decision (Tr. 1-5, 467), and this action followed.

11-15  Susan L. York

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 46, high school education and training as an emergency room technician, and work history could perform any jobs if she could lift and carry 10 pounds occasionally, stand and walk for two hours and sit for six hours, with the option of sitting and standing every 30 minutes, and also had the following restrictions.  (Tr. 40).  She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally bend, balance, and stoop; (3) could reach in front, but should reach over her head only occasionally; (4) could hold, grasp, and turn as well as pick, pinch, and feel; (5) should not be exposed to vibration or hazardous conditions; and (6) should have minimal contact with the public but was able to interact with coworkers and supervisors. (Id.).  The VE responded that there were jobs that such a person could perform, namely dispatcher, order clerk, and surveillance monitor, and proceeded to give the numbers in which they existed in the state and national economies.

On appeal, the plaintiff raises a variety of issues, but most of them are subsumed by the ALJ's failure to follow procedural requirements concerning the treating physician rule.

As the plaintiff points out, the only opinion regarding the plaintiff's residual functional capacity from a treating source came from Dr. Brad Mullen, who treated the plaintiff beginning in February, 2007 for evaluation and management of cervical pain and migraine headaches.  (Tr. 358).  He noted that the plaintiff had undergone

11-15  Susan L. York

a previous cervical discectomy and fusion at the C6/7 level but she was still troubled by chronic neck pain, and a 2005 cervical MRI scan and right shoulder MRI not only showed evidence of the prior fusion at C6/7 but also spurring and a disc bulge at C4/5 with a suspicion of a small disc protrusion, and degenerative changes and inflammation of the AC joint of the right shoulder.  (Tr. 279-80, 358-59).  He found limitations in her cervical range of motion and proceeded on a course of fluoroscopic-guided cervical epidural steroid injections that continued from 2007 and through 2009, when Dr. Mullen apparently began Botox injections.  (Tr. 362-64, 416-39, 449, 455).

Dr. Mullen prepared two "Attending Physician's Statements" for insurance purposes in July and November, 2007 which limited the plaintiff to less than full-time work.  The first statement limited her to sitting one hour a day, walking one hour, and standing two hours "intermittently."  (Tr. 407).  He also indicated that Mrs. York could not climb, twist, stoop, bend, or reach above shoulder level.  He also stated that she could work a total of approximately two hours a day.  (Id.).  The November 9, 2007 report was similar, except that standing was limited to one hour and he felt that she could not work any hours per day.  (Tr. 410-11).  Both of the statements indicate that she was unable to engage in stressful situations or engage in interpersonal relations because they would cause neck pain and spasms.

The ALJ's discussion of these opinions was both brief and misleading.  The ALJ described the restrictions as limiting Mrs. York to "modified sedentary work" (Tr.

7

14) and that the physician "found her able to be gainfully employed, but only at less than sedentary level in a stress-free environment" (Tr. 16). Clearly, however, Dr. Mullen was stating that the plaintiff could not even perform full-time work.

It is well established that an ALJ is required to give greater deference to the opinion of a treating physician than to non-treating sources because they are most able to "provide a detailed, longitudinal picture" of the plaintiff's condition, which "cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultative examinations of brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). While the ALJ is not required to give the treating physician's opinion controlling weight if it is not well-supported by objective evidence, he or she must still give good reasons for the weight it is to be afforded. Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004). If the ALJ does not even correctly describe the treating physician's limitations, as here, his opinion cannot have been properly considered. Accordingly, a remand will be required on this issue.[1]

---

[1] In addition, the court notes that there is an inconsistency between the hypothetical question as presented to the VE, which simply states that Mrs. York could "hold, grasp, and turn as well as pick, pinch, and feel" (Tr. 40) and the ALJ's ultimate residual functional capacity finding which limits her to "occasionally" performing these activities (Tr. 15). A review of the Dictionary of Occupational Titles (DOT) numbers given by the VE for the jobs of dispatcher and order clerk show that they both require "frequent" handling, and that the order clerk job also requires "frequent" fingering. DOT §§ 222.587-038; 209.567-014. There was no conflict with the job of surveillance monitor, DOT § 379.367-010, but only 2,000 statewide jobs were named. (Tr. 41).

11-15  Susan L. York

The plaintiff makes a number of additional assertions which will be dealt with briefly.  Regarding the ALJ's failure to find depression to be a "severe" impairment, the court notes that for practical purposes the ALJ did place a functional limitation of minimal contact with the general public due to the plaintiff's mental state. Therefore, whether or not she made a formal finding that depression was "severe" is largely a moot point.  However, Dr. Mullen, as the ALJ noted, had provided more restrictions on working in stressful situations and regarding all interpersonal relationships, not just with the general public.  While the ALJ may have discounted these restrictions due to the plaintiff's daily activities (Tr. 16), her failure to accurately describe the physician's limitations makes it difficult to determine the basis for her reasoning.

The plaintiff finds fault with the ALJ's statement that her activities of daily living alone would suffice for a finding of not disabled. (Tr. 16).  The ALJ had noted that Mrs. York was able to spend time with her grandchildren, attend sporting events, care for her pets, shop for groceries, do household chores, and make trips in a camper. (Tr. 13, 16).  As the plaintiff points out, the Sixth Circuit has been critical of descriptions of daily activities which are one-sided, and has noted that minor life activities such as housekeeping, caring for pets, and driving do not establish an ability to perform full-time work.  Rogers v. Commissioner of Social Security, 486 F.3d 234, 248-9 (6th Cir. 2007); Kalmbach v. Commissioner of Social Security, 409 Fed. Appx. 852 (6th Cir. 2011).  In the present case, the plaintiff noted

that her ability to perform housework was very limited (Tr. 27-8, 136-8) and both she and her husband indicated that she would only shop about twice a month (Tr. 139, 148). She also reported that she had to lie down during the day at least twice. (Tr. 30, 140). Therefore, it appears that the claimant's objection to the ALJ's decision in this regard is meritorious. The court also agrees that the ALJ's statement that the claimant's "truthfulness . . . has been adversely affected by exaggeration and some secondary gain" (Tr. 18) is an adverse credibility determination which is not adequately explained, and should be supported by specific examples.

The court does not agree with the plaintiff's contention that the Commissioner's Listing of Impairment 1.04A is met. Among other items, the Listing requires a showing of sensory or reflex loss, and none of the physical examinations found either of these. (E.g., Tr. 328, 360). Nor does the court agree that the ALJ was required to recontact Dr. Mullen for clarification of his opinion because the plaintiff was unrepresented at the hearing. While there is a heightened duty on the part of the ALJ to develop the evidence when a claimant is unrepresented, Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983), there is no "bright line test." The Commissioner's regulations only require the ALJ to recontact a treating source to obtain more information if the evidence is inadequate to make a determination. 20 C.F.R. § 404.1512(e). As the defendant notes, there is no indication that Dr. Mullen's opinion and the evidence he provided was inadequate to make a determination as such. Dr. Mullen provided opinions on

at least two occasions and it is not clear what additional information could have been uncovered by further inquiry.

The decision will be remanded for further consideration of the factors outlined in this opinion.

This the 3rd day of November, 2011.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**